UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

CEDRYK SMITH,

Plaintiff,

v. Case No.: 2:26-cv-2119

SAPUTO CHEESE USA INC.,

Defendant.

---

**COMPLAINT**

---

The Plaintiff, Cedryk Smith, alleges through his undersigned counsel, as follows:

**NATURE OF CASE**

1. Plaintiff, Cedryk Smith, a Black man, sues his former employer, Saputo Cheese USA Inc., for subjecting him to a racially hostile work environment, for retaliating against him after he complained about it, and for terminating his employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

2. For more than three years, a fellow packaging lead directed racist "jokes" at Smith, the only Black employee on first shift at Saputo's Almena, Wisconsin plant, including a "hanging tree" joke and the remark that "the only brown we need around here is the brown box on five." Smith repeatedly reported the conduct to Human Resources and to his managers. Saputo did nothing to stop it. Instead, when Smith pressed his complaints, Saputo's Human Resources manager lectured him about his supervisor's feelings, warned that

employees who could not live by Saputo's "values" did not need their jobs, issued him a written "reminder," and sent him home from work to "think about what [he'd] done." Seven weeks after Smith filed a charge of discrimination, Saputo fired him.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(a)(4), because this action arises under the laws of the United States, including 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 1981.

4. Venue is proper in the Eastern District of Wisconsin under 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices alleged herein were committed in the State of Wisconsin, and under 28 U.S.C. § 1391(b) and (c), because Defendant is subject to personal jurisdiction in, and therefore resides in, this District.

## CONDITIONS PRECEDENT

5. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. P., have been performed or have occurred.

6. On July 6, 2026, Smith filed a charge of race discrimination against Saputo with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 443-2026-04209, alleging a continuing racially hostile work environment beginning on or about February 6, 2023.

7. On September 18, 2026, the EEOC issued Smith a Notice of Right to Sue on that charge. Smith commences this action within 90 days of his receipt of that notice.

8. At least one act contributing to the hostile work environment alleged herein occurred within 300 days before Smith filed his charge, including Lewis's October 2025 conduct, Mesecher's January 2026 "brown box" remark, and the June and July 2026 conduct

alleged below. The entire hostile work environment, including acts occurring before that period, is actionable.

9. Smith's claims of retaliation, including his termination, arise from Saputo's conduct after Smith filed his EEOC charge and after his counsel notified Saputo of his claims, grow out of that charge, and are like or reasonably related to it. Smith's Section 1981 claims are not subject to any administrative exhaustion requirement.

**JURY DEMAND**

10. Plaintiff demands that this case be tried before a jury of his peers.

**PARTIES**

11. Plaintiff, Cedryk Smith, is an adult Black man who resides at 125 Pleasant Avenue, Almena, Wisconsin 54805.

12. Defendant, Saputo Cheese USA Inc. ("Saputo"), is a Delaware corporation with its principal office located at 10700 W Research Dr., Ste. 400, Milwaukee, WI 53226, and whose registered agent for service of process in Wisconsin is CT Corporation System, 301 S. Bedford St., Ste. 1, Madison, WI 53703.

13. Saputo is a dairy processor that operates a cheese manufacturing plant located at 1052 6th Street, Almena, Wisconsin 54805 (the "Almena plant"), and, upon information and belief, conducts significant business within the Eastern District of Wisconsin, including offices at 10700 Research Drive, Milwaukee, Wisconsin 53226.

14. Saputo is an employer within the meaning of 42 U.S.C. § 2000e(b), and at all relevant times employed more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year.

## OPERATIVE FACTS

15. Saputo hired Smith on or about February 11, 2019, to work at the Almena plant.

16. From at least 2023 until Saputo terminated his employment on August 24, 2026, Smith worked as the Lead for Packaging on first shift at the Almena plant, earning approximately $32.09 per hour.

17. As Packaging Lead, Smith directed the work of the packaging crew, including during sanitation, and fielded crew members' work concerns.

18. Smith was the only Black employee working first shift at the Almena plant.

19. At all relevant times, Smith reported to Ken Lewis, the first-shift Packaging Supervisor, who in turn reported to Angela Hines, the Packaging Manager.

20. At all relevant times, Julia Fossum was the head of Human Resources at the Almena plant, and Jennifer Ellefson worked in Human Resources under Fossum.

21. Saputo also employed a non-Black lead in the packaging department named Ryan Mesecher ("Mesecher"), who worked alongside Smith and Lewis and shared the packaging office with them.

22. Saputo maintains a written Harassment, Discrimination and Workplace Violence Prevention Policy that prohibits harassment based on race and color; that identifies as prohibited conduct "[r]epeated negative comments about a person's . . . culture," "[i]nappropriate teasing, taunting or making someone the brunt of pranks or practical jokes," and "[y]elling or shouting"; and that promises that Saputo "will investigate all allegations of discrimination, harassment . . . or retaliation in as prompt, thorough and confidential a manner as is reasonably possible."

23. The same policy prohibits "retaliation of any kind against any applicant or employee who in good faith reports discrimination, harassment, threats, intimidation, abusive behavior, or violence."

**Racist Jokes Directed at Smith**

24. Beginning on or about February 6, 2023, and continuing into 2026, Mesecher regularly made racist jokes in the packaging office and on the production floor and directed them at Smith.

25. In or around early 2025, Mesecher directed a racially derogatory "Velcro" joke at Smith.

26. In or around August 2025, Mesecher directed a "hanging tree" joke at Smith, invoking the lynching of Black Americans.

27. In or around January 2026, in the packaging office and in the presence of Smith, Lewis, and another employee, Chad Zezza, Mesecher stated, "the only brown we need around here is the brown box on five," and laughed.

28. Lewis, Smith's supervisor, was present for Mesecher's "brown box" remark and did nothing to stop or report it.

29. Mesecher also spoke disparagingly about Smith to the employees Smith led when Smith was not present, undermining Smith's authority with his crew.

30. Smith found Mesecher's racist jokes humiliating, degrading, and threatening, and they were in fact humiliating, degrading, and threatening to a reasonable Black employee.

**Smith's Supervisor Repeatedly Yells at Him**

31. Throughout 2025 and 2026, Lewis repeatedly yelled at Smith at work.

32. On January 28, 2025, Lewis sent Smith a text message stating, "I never meant to be insulting or in any way show a shred of hate to you," and attributing his conduct to being "tired" and "cranky."

33. On May 25, 2025, after yelling at Smith at work two days earlier, Lewis texted Smith, "I wanted to apologize for Friday. . . . [U]nfortunately that means I will lash out more on you when cranky. . . . [N]ot tell or yell at you. I hope you can forgive me . . . ."

34. On September 10, 2025, Lewis texted Smith, "Sorry about today. I didnt realize I was embarrassing you at first and then our banter went further than it should have."

35. On October 23 and 24, 2025, Lewis again berated Smith—once for telling new employees about Saputo's benefits, and once for checking on the production floor at the end of sanitation.

36. Smith reported Lewis's October 23 and 24, 2025 conduct in writing to Hines, and also reported that crew members brought their concerns to Smith because they felt safer talking to him than to Lewis.

37. In or around mid-2025, Lewis recommended Mesecher, rather than Smith, to temporarily cover the duties of the packaging coordinator while the coordinator was on vacation.

**Smith Complains and Saputo Fails to Act**

38. Over approximately two years, Smith repeatedly reported Mesecher's racist jokes and Lewis's treatment of him to Fossum and Ellefson in Human Resources and to Hines, both in person and in meetings.

39. Among other things, Smith reported the "Velcro" joke and the "hanging tree" joke to Human Resources and to Hines.

40. Saputo did not conduct any meaningful investigation of Smith's complaints, did not discipline Mesecher, and did not take any action reasonably calculated to stop the racist jokes.

41. On or about June 29, 2026, while Lewis was on vacation, Mesecher refused Smith's request to help the crew finish sanitation on time and told Smith that if he wanted to talk to Mesecher, he had to go through Mesecher's supervisor. Smith reported the incident to Hines and Fossum and again described Mesecher's conduct toward him.

42. On July 1, 2026, Smith asked a coworker whether a production run would use a large or small tote. Lewis, angry that Smith had asked the coworker rather than him, repeatedly struck the desk and shouted at Smith, "Why aren't you talking to me?" and "I'm right here, I'm your boss."

43. Smith left work, told another supervisor what had occurred, and returned later that morning to report the incident to Ellefson and Fossum.

**The July 2, 2026 Meeting**

44. On July 2, 2026, Fossum convened a meeting attended by Smith, Lewis, Mesecher, Hines, and Ellefson.

45. At the meeting, Smith described Lewis's July 1 outburst and his ongoing treatment of Smith, and told Lewis that his outbursts made it difficult for Smith even to get out of bed and come to work.

46. Lewis admitted that he lets his emotions "get the best of" him and that he lashes out at Smith.

47. Smith also confronted Mesecher, in front of management and Human Resources, about Mesecher calling him a "brown box," and about Mesecher's pattern of making racist jokes and talking about Smith to the crew.

48. Mesecher admitted, in front of management and Human Resources, that he had made the racist jokes Smith had been reporting.

49. Rather than address the racist conduct, Fossum told Smith that he was "wrong" for greeting another supervisor but not Lewis, directed Smith to say good morning to everyone in a room, directed Smith not to ask anyone but Lewis about production matters, and told Smith that he was wrong for not caring about Lewis's feelings, in violation of Saputo's corporate "values."

50. Fossum then told the group that they should "all just . . . be grateful that we are not taking any kind of disciplinary actions," and warned that if they could not live by Saputo's values, they did not need their jobs or their positions.

51. Saputo took no disciplinary or corrective action against Mesecher for the racist jokes he admitted making, and Mesecher continued to work alongside Smith in the packaging office.

52. Human Resources instead told Smith that he needed to learn to deal with his supervisor's behavior and manage his supervisor's emotions if he wanted to keep doing his job.

**Smith Asserts His Rights and Saputo Retaliates and Fires Him**

53. On July 6, 2026, Smith filed his EEOC charge alleging racial harassment, and his then-counsel sent Saputo a written demand asserting that Smith had been subjected to racial harassment and a hostile work environment in violation of Title VII and Section 1981.

54. On July 9, 2026, Ellefson emailed Hines, copying Fossum, directing that packaging employees on all shifts be given a "Discussion for Shift Huddles" reminding them, among other things, to avoid comments about coworkers' "personal characteristics" and to "[a]ddress concerns respectfully and promptly with the individual, supervisor, or HR before conflicts escalate." The huddle did not identify or correct Mesecher's racist conduct.

55. On or about July 13, 2026, Saputo, through its corporate counsel, took the position that the Almena plant had no record of Smith ever making a harassment complaint and characterized the matter as a personal dispute between Smith and another supervisor.

56. On or about July 21, 2026, Hines presented Smith with a written document, which she called a "friendly reminder," concerning his conduct and directed him to sign it.

57. On or about July 24, 2026, Fossum, Ellefson, and Hines met with Smith to discuss "placement alternatives" for him. When Smith attempted to record the meeting, Human Resources ended it, reconvened with management, and then directed Smith to leave his shift early and go home to "think about what [he'd] done."

58. At a meeting that same day, Fossum told Smith that there was no report concerning Mesecher's racial comments and that the statements of those who attended the July 2 meeting did not reflect the admissions Smith described.

59. Smith promptly wrote to Fossum disputing the basis for the disciplinary action and asking whether he had been assessed an attendance point and whether he had been suspended with or without pay.

60. On July 27, 2026, Lisa Housner ("Housner") of Saputo responded that Smith had been sent home "with pay" as an "opportunity . . . to reset," and that Saputo "expect[s] all employees to follow our policies and remain professional at work."

61. On August 24, 2026, Housner called Smith and informed him that his employment was terminated for not following company policy.

62. Saputo's stated reason was false. Smith had not violated company policy by placing his hand on a forklift while speaking to the driver.

63. Non-Black employees who, like Smith, worked under the same decision-makers (Housner or Fossum) regularly placed their hands on forklifts while speaking to the driver, and, upon information and belief, Saputo did not discipline or terminate them for doing so.

64. Saputo's reason for terminating his employment was a pretext for retaliation and race discrimination.

65. Saputo terminated Smith's employment approximately seven weeks after he filed his EEOC charge, six weeks after his counsel notified Saputo of his claims, and one month after Saputo sent him home from work.

66. Saputo took these actions against Smith, including terminating his employment, because he complained of racial harassment, filed an EEOC charge, and asserted his rights under Title VII and Section 1981.

67. Saputo's actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

**Damages**

68. As a result of Saputo's conduct, Smith has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, anxiety, inconvenience, and loss of enjoyment of life, and has incurred attorneys' fees and costs.

69. Saputo acted with malice or with reckless indifference to Smith's federally protected rights.

**FIRST COUNT**
**TITLE VII – RACIALLY HOSTILE WORK ENVIRONMENT**
**42 U.S.C. § 2000e-2(a)(1)**

70. As and for a first Count, Smith reasserts the allegations recited above and fully incorporates those paragraphs herein by reference.

71. Smith was subjected to unwelcome harassment because of his race.

72. The harassment was sufficiently severe or pervasive to alter the conditions of Smith's employment and create a hostile or abusive working environment, both objectively and subjectively.

73. Saputo is liable for the harassment because Smith's supervisor participated in and failed to stop it, and because Saputo knew of the harassment through Smith's repeated complaints and failed to take prompt and appropriate corrective action.

74. Saputo thereby discriminated against Smith with respect to the terms, conditions, and privileges of his employment because of his race, in violation of 42 U.S.C. § 2000e-2(a)(1).

**SECOND COUNT**
**TITLE VII – RETALIATION**
**42 U.S.C. § 2000e-3(a)**

75. As and for a second Count, Smith reasserts the allegations recited above and fully incorporates those paragraphs herein by reference.

76. Smith engaged in statutorily protected activity by opposing racial harassment through his internal complaints and by filing a charge of discrimination with the EEOC.

77. Saputo subjected Smith to materially adverse actions, including threatening his job, issuing him a written reminder, discussing “placement alternatives” for him, sending him home from work as discipline, and terminating his employment, because of his protected activity, in violation of 42 U.S.C. § 2000e-3(a).

**THIRD COUNT**
**SECTION 1981 – RACIALLY HOSTILE WORK ENVIRONMENT**
**42 U.S.C. § 1981**

78. As and for a third Count, Smith reasserts the allegations recited above and fully incorporates those paragraphs herein by reference.

79. Smith’s employment with Saputo was a contractual relationship within the meaning of 42 U.S.C. § 1981(b).

80. Saputo intentionally subjected Smith to a racially hostile work environment, denying him the same right to make and enforce contracts, and to the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, as is enjoyed by white citizens, in violation of 42 U.S.C. § 1981.

**FOURTH COUNT**
**SECTION 1981 – RETALIATION**
**42 U.S.C. § 1981**

81. As and for a fourth Count, Smith reasserts the allegations recited above and fully incorporates those paragraphs herein by reference.

82. Smith engaged in protected activity by complaining of race discrimination and racial harassment and by asserting his rights under Section 1981.

83. Saputo subjected Smith to materially adverse actions, including terminating his employment, because of that protected activity, in violation of 42 U.S.C. § 1981.

**FIFTH COUNT**
**SECTION 1981 – RACE DISCRIMINATION (TERMINATION)**
**42 U.S.C. § 1981**

84. As and for a fifth Count, Smith reasserts the allegations recited above and fully incorporates those paragraphs herein by reference.

85. Saputo intentionally terminated Smith's employment because of his race, denying him the same right to make and enforce contracts, including the making, performance, modification, and termination of contracts, as is enjoyed by white citizens, in violation of 42 U.S.C. § 1981.

WHEREFORE Plaintiff, Cedryk Smith, demands relief as follows:

A. A declaration that Saputo violated Title VII and 42 U.S.C. § 1981;

B. Reinstatement to his former position, or front pay in lieu of reinstatement;

C. Back pay and lost benefits, with prejudgment interest;

D. Compensatory damages for emotional distress, humiliation, and other non-pecuniary losses;

E. Punitive damages;

F. Reasonable attorneys' fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988; and

G. Such other relief as the Court deems just and equitable.

Dated this 13th day of November, 2026.

*Electronically signed by Alan C. Olson*
Alan C. Olson, Bar No.: 1008953
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606

Fax: (262) 785-1324
Email: AOlson@Employee-Advocates.com